# Ottinger
## EMPLOYMENT LAWYERS

**Ariel Y. Graff**
ari@ottingerlaw.com

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

December 6, 2016

**BY ECF**

The Hon. James Orenstein
United States Magistrate Judge
Eastern District of New York

      Re:    *Silva, et al., v. Call-A-Head Corp., et al.* – No. 16-cv-4815 (KAM)(JO)

Dear Judge Orenstein:

As Your Honor is aware, we represent Plaintiffs in the above-referenced collective action. As set forth below, we write pursuant to Rule III(A)(2) of Your Honor's Individual Practice Rules to respectfully request that the Court enter a temporary restraining order and preliminary injunction enjoining Defendants and their agents from: (a) retaliating against Plaintiffs and any other putative Class Members who participate in this action; and/or (b) intimidating or engaging in any conduct intended to discourage Plaintiffs and potential collective action members from participating in this action or providing truthful testimony or evidence in support of this action.

    **A.**    **Background**

The Court conditionally certified an FLSA collective action on November 3, 2016 (ECF #17). The Court approved the parties' jointly proposed form of FLSA notice and Opt-In Form on November 10 (*id.* #18). Defendants are currently scheduled to provide Plaintiffs' counsel with names and contact information for transmission of the FLSA notice to potential opt-in Plaintiffs by this Friday, December 9 (*id.* #20). On November 22, following the conditional certification of this action (but prior to the transmission of FLSA notices to the full Collective), Mr. Daniel Falcone, an Account Executive of Defendants, elected to opt-in as a Party Plaintiff. Plaintiffs filed his Opt-In form that same day (*id.* #19). In a telephone conference between counsel on Monday, November 28, counsel for Defendants indicated that they were as yet unaware that Mr. Falcone had opted-in.

Defendants proceeded to terminate Mr. Falcone's employment on Friday, December 2, a mere four days after learning that Mr. Falcone had opted-in, and despite Mr. Falcone's more than two-year history of satisfactory work performance (Ex. A ¶¶ 2, 23-27 ).[1] As set forth in the accompanying affidavit of Mr. Falcone, Defendants issued him written disciplinary warnings – on specious grounds – during the two days prior to his termination (*id.* ¶ *passim*). The very close temporal proximity, together with the implausibility of Defendants' purported justification for

---

[1]     Citations to Ex. A ¶ __ refer to the accompanying Affidavit of Opt-In Plaintiff Daniel Falcone.

Mr. Falcone's termination (*id.*), demonstrate that he was terminated in retaliation for opting-in to this action, and to deter other employees from exercising their right to opt-in as well.

### B.     Legal Standard

Pursuant to Rule 65(a), a court may grant a TRO and preliminary injunction where Plaintiffs can demonstrate: (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of the claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *See e.g. Otoe-Missouria Tribe of Indians v. N.Y. Dept. of Fin. Servs.*, 769 F. 3d 105, 110 (2d Cir. 2014). Here, Mr. Silva, Mr. Falcone, and other similarly-situated members of the FLSA Collective can easily satisfy these elements. Plaintiffs and those they seek to represent will suffer irreparable harm absent injunctive relief; Plaintiffs have a likelihood of success on the merits; and a balance of the hardships tips heavily in Plaintiffs' favor.

### C.     Plaintiffs Can Establish Irreparable Harm

Irreparable harm is "harm which is not capable of being fully remedied by money damages." *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 134-35 (W.D.N.Y. 2003). The Second Circuit has held that unlawful retaliation and weakened enforcement of federal law can itself constitute irreparable harm in the context of a preliminary injunction application. *See Holt v. Continental Group*, 708 F.2d 87, 91 (2d Cir. 1983) (where retaliatory conduct "carries with it the distinct risk that other employees may be deterred from protecting their rights under [Title VII] or from providing testimony for the plaintiff in her effort to protect her own rights. These risks may be found to constitute irreparable injury.").[2]

The Supreme Court has also made clear that the anti-retaliation provision of the FLSA is indispensable to the enforcement scheme of federal wage and hour law. *See e.g. Centeno-Bernuy*, 302 F. Supp. 2d at 135 ("It is well established that the anti-retaliation provision of the FLSA is critical to the entire enforcement scheme of the federal wage and hour law") (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960); *see also E.E.O.C. v. Locals 14 and 15, Int'l Union of Operating Eng'rs*, 438 F. Supp. 876, 879-80 (S.D.N.Y. 1977) ("Witnesses who lose work opportunities, suffer harassment, and are otherwise retaliated against because of their testimony, are going to be much less likely to testify in a subsequent proceeding ... if such retaliation goes unchecked."). "Unchecked retaliation, no matter its form, subverts the purpose of the FLSA." *Centeno-Bernuy*, 302 F. Supp. 2d at 135.

---

[2]     Like the Second Circuit, courts throughout the country have held that where a party has retaliated against another party for attempting to enforce protected rights, such retaliation is an important factor in determining whether irreparable harm has been established. *See e.g. Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938-39 (9th Cir. 1987) ("allegations of retaliation for the exercise of statutorily protected rights represent possible irreparable harm far beyond economic loss. This is because retaliatory action for protected activity carries with it the risk that employees may be deterred from engaging in legitimate conduct"); *Garcia v. Lawn*, 805 F.2d 1400, 1405-06 (9th Cir. 1986) ("The claimed violation of the law in this case is retaliatory action … which, if plaintiff is correct, will have a deleterious effect on the exercise of these rights by others. That … chilling effect of retaliatory activity can constitute irreparable harm ...."); *De Novellis v. Shalala*, 947 F. Supp. 557, 563 (D. Mass. 1996), *aff'd*, 135 F.3d 58 (1st Cir. 1998) (same).

Here, Plaintiffs and the FLSA Collective will undoubtedly suffer irreparable harm if Defendants' retaliatory actions are not enjoined. As stated above, Plaintiff Falcone was terminated for transparently pretextual reasons after more than two years of strong performance a mere four days after Defendants learned that he had opted-in to this action. Defendants' retaliatory actions against Mr. Falcone, as the very first collective action member to opt-in to this action — and the chilling effect that such retaliatory conduct imposes on other potential collective action members — undermine the important purposes of the anti-retaliation provisions of the FLSA, and absent an injunction, will cause irreparable harm.

### D.  Plaintiffs Can Establish a Likelihood of Success on the Merits

Plaintiffs have also demonstrated a likelihood of success on the merits of the FLSA retaliation claims.[3] The FLSA provides that it is "unlawful for any person ... in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. 215(a)(3). To establish a *prima facie* claim of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Lai v. Eastpoint Int'l, Inc.*, 2000 WL 1234595, *3 (S.D.N.Y. Aug. 31, 2000).

Here, Mr. Falcone engaged in protected activity under the FLSA when he became a Party Plaintiff on November 22. Defendants terminated his employment a mere four days after becoming aware of his decision to do so. Plaintiffs are highly likely to establish a causal relationship between Mr. Falcone's protected complaint and the alleged unlawful retaliation given the temporal proximity between these events, Mr. Falcone's long history of satisfactory work performance, and Defendants' otherwise implausible "formal" justification for his abrupt termination. *See Nagle v. Marron*, 663 F.3d 100, 110 (2d Cir. 2011) (finding that a period of six weeks would "fit[] comfortably within any line [the Second Circuit] might draw" for inferring retaliation from temporal proximity).

### E.  Plaintiffs Can Establish a Balancing of Hardship in Their Favor

Even assuming *arguendo* that Plaintiffs have failed to establish a likelihood of success on the merits, for the reasons stated above, they have established sufficiently serious questions going to the merits to make them a fair ground for litigation. Further, the balance of hardships tips decidedly in Plaintiffs' favor as federal and state wage-and-hour laws already prohibit the injunctive relief requested. Moreover, there is absolutely no burden imposed on Defendants by the requested injunctive relief, other than perhaps directing their managerial employees to follow the law. However, without the injunctive relief requested, FLSA Collective members will be deterred from vindicating their rights, Plaintiffs will be prejudiced in establishing that their rights have been violated, and Defendants will be emboldened to engage in further unlawful retaliation.

---

[3]  Although retaliation claims are inexorably linked to Plaintiffs' substantive claims for relief under the FLSA, Plaintiffs may also seek leave to amend the Complaint to incorporate FLSA and NYLL retaliation claims on behalf of Mr. Falcone and any other Plaintiffs or potential opt-in Plaintiffs who are subjected to unlawful retaliation, or to file separate, related actions on their behalf.

*   *   *   *

Thank you for Your Honor's consideration.

Respectfully submitted,

*Ariel Y. Graff*
Ariel Y. Graff


Cc:   All counsel of record